Good morning, your honors. My name is Brett Switzer. I'm here representing Gregory Ladner, the appellant in this case. At this time, I'd like to reserve two minutes for rebuttal, please. That's granted. Thank you. As the court is well aware, we do have a threshold issue in this case regarding Mr. Ladner's apparent fugitive status. I would, of course, be happy to address that issue separately if the court would like. But unless directed otherwise, because I think that issue really turns in large part on the importance of the merits issue and the need for guidance from this court on that issue, I would proceed to the merits. How does the fact that your client has absconded have anything to do with the merits? I mean, the guy's disappeared, right? I don't think anybody's disputing that. In fact, let me put it to you this way. In your reply brief, I think you say that this court should not countenance the government's failure to raise the fugitive issue until after briefing had begun. Taking that line of thinking about what we should and shouldn't countenance in the way of wasted resources, why should we countenance a defendant absconding under sentence and pay attention to the merits argument that that fugitive would put before the court? Because the issue in this case is larger than this case, Your Honor. This is an extremely important issue that has divided the courts of appeals, is recurring. Gentlemen, would you mind speaking up, please? Please. Thank you. Certainly, Your Honor. I apologize. Now that I've rudely interrupted everybody, I disagree that the first issue is to talk about the discretionary power of the court to accept or reject an appeal by a fugitive. I raised the question of jurisdiction, and I am not satisfied with the answer I got. I received, we asked to address whether Mr. Ladner had authorized this appeal, and the public defender's response stated, Mr. Ladner made it clear to assigned counsel during the course of representation and before becoming a fugitive that he wished to appeal. Then public defender has afflicted him. This representation is based on discussions Mr. Slicer has with the assigned trial counsel, and I don't know who that was, within the public defender office. An affidavit to this effect can be provided if required by the court. Well, I don't need an affidavit. Anything that a lawyer tells me, I have to believe that I've always operated that way. But, putting that aside, I need to know what was said. You know, this is old Sergeant Friday in Dragnet, the fact man. I want to know what was talked about between the subsequent fugitive and the trial counsel from the public defender's office. At this time, did Ladner know what the grounds of the appeal was going to be if he agreed to make an appeal? Because what is presented here, why did he run away if he was interested in an appeal? So I would like to get a letter from the trial counsel giving everything dealing with that conversation about retaining the public defender's I can tell the court that there was no question in this case with respect to what the issue would be on appeal and Mr. Ladner's dissatisfaction with the result, with respect to that issue in the trial court. This was an issue, the defense of entrapment by estoppel was noticed by the defendant before trial. That notice was stricken. A jury instruction was submitted on that. Rejected, of course. A post-trial motion for a new trial was filed. Again, rejected. My understanding, and again, this is based on conversations with trial counsel, and as your honor may be aware, in our office, appellate counsel is separate from trial counsel. Mr. Ladner made perfectly clear his dissatisfaction and his wish to appeal that central issue in this case during the trial, and many times it was rejected. Your letter says a notice of appeal. I still want a presentation, at least to me. I'm not sure any of my colleagues are interested in it. And don't think this will help me. Why are you making a speech to me on this issue, when all I'm asking is, give me a piece of paper from the trial counsel telling me exactly what the point is. I would be happy to do that, your honor. I'm sorry. Sorry? Counsel, your submission says that a notice of appeal was filed January 13, 2006, nearly a month before Mr. Ladner became a fugitive. Is that correct? Correct, your honor. When did he become a fugitive? Do we know a specific date? Well, his self-surrender date was February 9, 2006, as we had set forth in our letter. I have no knowledge of when or if Mr. Ladner left the district prior to that, during that period or not. Clearly, as I represented in the letter, the fugitivity begins when he was required to report under Judge Romero's self-surrender order. He did not do that. That was February. All right. Thanks. The notice of appeal was filed, I believe, it was filed immediately after the district court's judgment, maybe a day or two thereafter. What case do you have for the proposition that we should be concerned in exercising our discretion, given this fact pattern, as to the importance of the merits issue? How does that impact on our exercise of discretion? Well, the right case in which this court recognized that in the proper case, the court should exercise and can exercise its discretion to hear an appeal is certainly relevant. The issue here, again, in the consistent line of cases from this court and from the Supreme Court, makes this a discretionary issue. I would suggest that the elements or the considerations, the criteria that the court should use in determining whether to exercise that discretion is both the importance of the issue and issues of judicial economy. And Judge Jordan, you had raised this, I believe, with me initially. I do believe there is an issue here of judicial economy with respect to when the issue was raised by the government. This court has not scheduled argument in this matter to discuss the issue. And I would submit that the Ortega considerations that were articulated by the Supreme Court with respect to the enforceability of the judgment and so forth, while it is, it's really, I don't think there's any dispute here that if Mr. Ladner is apprehended, the judgment of this court will certainly be effective as against him. I would just say, Your Honors, that I believe that the importance of the issue here outweighs the other issues with respect to deterrence and so forth. Counsel, let me interrupt you there. The importance of the issue. Has any other court of appeals accepted the Ninth Circuit rule? The Ninth Circuit rule has been rejected by three, by four other courts of appeals, Your Honor, yes. It's not been addressed by this court. And it is an issue, again, when I say importance of the issue, it's not just that it's an issue of the right to present a decision. I guess what you said is a very important issue. The Ninth Circuit was the first decision on this issue. Is that right? Correct, Your Honor. Okay. And since that time, no other court of appeals has accepted it. That's correct. All right. Now, I would argue, however, that, I mean, clearly, the issue, the lead case rejecting Talmadge in the Third Circuit is the Hardridge case, as I have presented in the briefs. Now, the Hardridge case got both the agency issue wrong. In other words, the threshold fact of whether an FFL is a government official. But more importantly, it improperly weighed, and I would suggest, gave too much weight to what it saw as policy considerations for why permitting the entrapment by estoppel defense here would be an error. In fact, the policy issues, I would argue, cut in our favor. Dealing first with the agency point, it is absolutely clear from the law that FFLs are granted extraordinary power in this regime. So your position is that a 14-year-old boy is the agent with the United States and can bind the government in its law enforcement decisions. Is that right? Yes, Your Honor. And the FFL should not have put a 14-year-old boy behind the counter. Now, what this court has looked to in determining government official status is there is no rank test. There is no level at which the government agent has to be at in order to trigger government official status. I would point the court to Pitt, in which customs agents, line agents, for the customs service were family government officials. Also in Pennsylvania, Canada, they're agents, right? Customs agents. They're employees of the government. I would suggest that they're employees. They're not licensed dealers. They're not the 14-year-old son of some friend of a gun dealer in Pennsylvania who lets a boy stand behind the counter. They're government employee agents. Is that the strongest analogy you've got as to customs agents? Employee status, whether you're on the government payroll, that's not the limit of agency law. The limit of agency, what drives the agency question is the scope of authority. We have independent contractors in agency law. We have employees. Here we've got a licensed, almost a sui generis situation in terms of the delegation of power, a licensed FFL. You have the agents in Pitt. You also have the local Pittsburgh office Corps of Engineers official in Pennsylvania Chemical. Does the court look to the representations of that individual to find that the entrapment by estoppel defense applied? I would argue, Your Honors, the quite broad scope of authority here to determine the lawfulness of the transaction. Again, this is not disputed. This is in the regulations. To alert the buyer as to the eligibility requirements and to be a conduit for information on that issue. The federal government requires, very plainly, FFLs to be thoroughly familiar with all of the laws and regulations. It requires them to prevent the transaction, not just based on the NCIC check. This is not a ministerial act where someone behind a counter is just looking at a printout. The law and the regulation requires an FFL to prevent the transaction whenever he or she has reasonable cause to believe that the buyer is ineligible. That may come from the NCIC. It may come from the FFL's independent observations of the situation. Excuse me, but isn't that just typical of lots of regulation, which says if this occurs, you are not permitted to do this. If you question and the person doesn't have a license, etc., you are not permitted to sell them. How does that confer agency status on a third party who is just being regulated? I'm unaware of another regulatory context in which the scope of authority is this broad. Certainly, there are plenty of other situations where private individuals need to check IDs or whatever else in order to provide a service or what have you. Here, I would argue that it is really a unique situation. When you take those agency principles and you look at what countervailed in the mind of Judge Kaczynski, for instance, in dissent in Talmadge and the Hardridge decision, it's really a policy consideration with respect to concerns that the defendant will manipulate the situation, will go in, provide erroneous information, elicit a positive response from the FFL, and then claim that that is a defense in court. How tough is it to become a licensed firearm dealer? What do you have to do? They're well regulated. There's an application process. There is a, from my understanding, there's a review of whether there is appropriate actions on the part of the FFL given its duties under the law. For instance, there are many cases in which the ATF has revoked a license in which there's litigation over whether they did anything wrong. Your argument is sort of one step beyond, right? Because you're not contending that the 14-year-old was a licensed firearm dealer. You're contending that because he was in a store owned by a licensed firearm dealer and that your client says, I asked the 14-year-old, he told me to fill out the form and say I wasn't a felon when I was, that the governance has stopped. So it's, if I follow the argument correctly, it's the agency of the licensed firearm dealer extended through to the teenage boy, right? The boy was an employee, was a sales clerk of, that's correct Your Honor, yes. He was a sales clerk of the store. I would suggest there's no meaningful difference in that purposes for who's on the FFL application. And in fact, when we look at the other cases, most of those cases, Austin involved a sales clerk, Talmadge, excuse me, Partridge, the case that declines to follow the Ninth Circuit involved a sales clerk and never was that the basis for a decision. I would suggest it wouldn't be a proper basis because really what we're talking about here is in terms of how the policy for allowing this defense cuts, I would argue, in favor of recognizing the defense, is that it gives the government an incentive to properly regulate and to monitor what FFLs are doing. Don't they have that incentive just generally as a policy matter? That may be the case, Your Honor, but it does not certainly seem to have had much of an effect here. I share the court's shock, I suppose, at the fact that this person was behind the counter and conducting the transaction. However, that doesn't relieve, I would suggest, the FFL or the government from the results of those representations. All right, we'll hear from you on rebuttal. Thank you. I wanted to ask a question of Mr. Kessler. All right. Yes, Your Honor. He's coming back to the microphone. The communication is so ragged that I can't even hear when the hearings are being changed. Just one question. Yes, Your Honor. Are you there, Mr. Schweitzer? Yes, I am. I'd like you to comment on Judge Kaczynski's dissent in the Ninth Circuit Police case. Yes, Your Honor, I would be happy to. Judge Kaczynski cited several essentially policy concerns aside from the agency issue for why the court should not recognize the defense here. He was concerned that, as I began to say before, that there was a manipulation problem, that a defendant would lie, essentially, and then elicit a favorable response. That's not an issue. The good faith here is an element of this defense. Improper, omitted, lying knocks you out of the box for this defense. So that's not really a concern. Judge Kaczynski also cited the issue of, well, we don't want to give FFLs, in effect, a veto over the enforcement of the gun laws. Well, I would argue that there's nothing to suggest, first of all, that FFLs, highly regulated individuals and people that they are, and people who do, as Your Honor, Judge Rendell had recognized, have an interest in maintaining their license. There's no reason to suggest that they are going to go out willy-nilly, essentially, misrepresenting the gun laws to people. So I don't think there's a floodgates issue here. And, of course, the law has been, the challenge has been the law on the Ninth Circuit for some 20 years, and Judge Alizo, perhaps you can correct me if I'm wrong, but I think— I'm familiar with the Ninth Circuit, and they have not had a case since endorsing this, have they? Yes, they have, Your Honor. I would say Baggergy, which is in our briefing. Okay, thank you. Well, thank you very much. I'm sorry I had to call you back. Okay, thank you. Mr. Brown. Thank you, Your Honors. Good afternoon to those judges in Philadelphia, and good morning to Judge Alizer. My name is Kenneth Brown, and I represent the government in this appeal. Essentially, as has been pointed out, Your Honors, there are two separate issues here. One is what I'll call the threshold issue, which is the government's view that this appeal should be dismissed because the defendant is a fugitive from justice. Why did you wait to raise that issue? You've heard your opposing counsel speak about it here, and it was in the papers as well. Why the delay? I'll answer it this way, Your Honor. In the reply brief, the defense cites Federal Rule of Appellate Procedure 27 as well as the cognate local appellate rules and the internal operating procedures. In none of those cites is fugitivity even discussed. Fugitivity is not mentioned. In addition to that, I think whether it's mentioned or not, just on sort of a common sense level, if the position of the government was going to be, hey, you don't need to even think about this appeal because the guy is absconded and he didn't show up for his self-report date, was there a reason why that wasn't raised coming out of the box? Yes, Your Honor, there was. In addition to what I've already mentioned, that it's not required by statute or rule, the U.S. Marshal investigating Mr. Ladner's flight had specifically informed both trial counsel for Mr. Ladner personally that Ladner was a fugitive. One of the reasons the government waited was to see if the defense on their own initiative would inform the court that Mr. Ladner was a fugitive, and we essentially gave them the opportunity to do that. They didn't do that. Also, part of the reason was the marshals were hopeful, at least initially, that it would be a fairly quick apprehension of Mr. Ladner. Obviously, if Mr. Ladner was apprehended, then fugitivity doesn't become an issue. While waiting until our brief was filed in August, we essentially gave Mr. Ladner an extra six months to do the right thing and return to this jurisdiction of the court, which he failed to do. Was there any sense that you wanted a ruling on the merits of this issue? I don't recall any discussions in that regard, Your Honor, no. As indicated before, the reasons cited in our brief, this case should be dismissed because Ladner is a fugitive from justice, and is citing the three principles of enforceability, disentitlement, and deterrence. This might be a silly question, but do we know that he did, in fact, flee? There's absolutely nothing in the record about anything other than that he did not appear and no one knows where he is. He could have been kidnapped, could have fallen in a trench. We don't know. Is there anything whereby, other than putting two and two together, we say he definitely is a fugitive as we speak? I use the term flee, Your Honor. I think the best record evidence I can cite is the fact that a grand jury returned an indictment against him for failure to surrender for services sentence and escape, which certainly has part and parcel of that flight. In addition to that, obviously, there are the assertions that we included in our letter brief, which indicates the discussions that the Deputy U.S. Marshals have had that they've been unable to apprehend him and haven't formed a defense counsel on that. All right. Thank you. As indicated, this is basically an equitable doctrine that the court can raise either. Actually, to answer, I think it was Judge Jordan's point earlier as to why we waited, if there's some type of waiver argument that might be raised by the defense, I'm not sure that that's accurate because this type of issue can also be raised through a spontane by the court. But at any rate, there's no persuasive reason for the court to hear the merits of this appeal. Mr. Ladner, be he a fugitive or elsewhere, is not within the jurisdiction of the court, and there's no reason for the court to believe that he would listen to a judgment either in his favor or against him. By absenting himself from the court, there's simply nothing to indicate that he plans to pay attention to anything that comes from anything I say or his lawyers say or that the court says. Under the principle of mutuality, which is discussed, I believe, in Molinaro and Ortega-Rodriguez, if the defendant is not willing to suffer the penalties of the crime, and clearly Mr. Ladner is not, then the appellate court should not afford the defendant the opportunity to improve his or her position by challenging the validity of his conviction. That goes to the disentitlement concern. Regarding the deterrence concern, if this had occurred at the district court level, the district court has other possible mechanisms to deal with Mr. Ladner, including contempt. What's jurisdiction best in the appellate court, according to Ortega-Rodriguez, that any deterrent to escape must flow from appellate consequences, and it's the government's position that the proper appellate consequence in this case is dismissal with prejudice of the appeal. Regarding the federal firearms licensee issue, assuming the court at some point wishes to reach the merits of this appeal, I'll start by initially saying that the notice of public authority defense, which raises the entrapment by estoppel issue, only specifically discusses a law enforcement agency or a federal intelligence agency. It doesn't say we want to reach out to a private citizen who happens to hold a federal license and somehow rope them into the entrapment by estoppel issue. As the court has pointed out, with the sole exception of Talmadge, the other four circuits have decided that private citizens with a license are private citizens, and that they are not somehow magically transformed into government officials, regardless of the potential level of their regulation. The reason, I think, or one of the reasons, why the other courts of appeals didn't discuss the issue in detail is because it's a fairly simple and straightforward application. A private individual remains a private individual, regardless of the license. Although there's not extensive discussion of the agency principle, I think that the clear weight of authority, the four circuits that have specifically held that a federal firearms licensee is not a government agent, as well as the two circuits that provide what I would call persuasive authority, which we cited in our brief, should have this court hold with a majority view that federal firearms licensees are not government agents for the purposes of the entrapment by estoppel offense. In sum, your honors, unless the court has any specific questions, the government would ask first that you dismiss the appeal on fugitive grounds with prejudice, and that second, assume that the court reaches the merits that you affirm the decision of the district court and follow the weight of the circuit authority from other circuits. That's all I have, unless the court has any specific questions. Judge Aldister, anything? Nothing. Thank you, counsel. Mr. Schweitzer, we'll hear from you in rebuttal. Thank you, your honors. We're not here to debate the discretionary power of the court to dismiss this appeal. Clearly that is the case. But discretion must mean something. If only the issues of deterrence, of absconders, of disentitlement, if that ruled the day, if those were the only considerations, it should be a jurisdictional issue because those concerns come into play in every fugitive case. Here, I would argue, there are countervailing concerns, issues about the need for guidance to district courts. Right now, there's a circuit's vote on this issue. The courts in this district, in this circuit, have a choice to make in terms of what is the law of the land. Do you have any indication that they're confused on the point? Do you have varying decisions coming out of the district courts in our jurisdiction? I do not at hand, your honor. I would be happy to provide them if I could in a supplemental letter. But I would say that many times these cases end up turning out as pleas. I mean, look at what happened here. What happened was the only viable defense, the only defense, was thrown out. And in its place, Mr. Ladner was allowed to argue that he didn't know he was a felon. Okay, that was directly contradicted by the evidence by Mr. Ladner's statement that was introduced at trial. There was no alternative defense. So when this issue comes up in the district courts and this defense is bounced, is stricken, there is very likely to be a plea and a resolution of the case, and it may not percolate up. So I would suggest to your honor, even if it has not reached this court before, that doesn't necessarily answer the question. I see I just have a few seconds. I would like to address a point that I think you were making, Judge Jordan, before with respect to the 14-year-old behind the counter. That is an issue that as well, I believe, is grounded in the idea of whether Mr. Ladner's reliance here was reasonable. I think that animates the court's concern. And what I would just suggest to the court is the jury here should have been able to That clerk testified at trial. The jury should have been able to look at him, assess his demeanor, assess his knowledge of the gun laws as displayed on the stand, and decide for itself would they have relied on this person. Here, that opportunity was taken away, and that was error. Thank you. All right. Thank you very much. We'll take the case under advisement.